UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| HARDWOODS SPECIALTY PRODUCTS USLP, PAXTON HARDWOODS LLC AND RUGBY HOLDINGS LLC DBA RUGBY ARCHITECTURAL BUILDING PRODUCTS, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) )<br><br>Ct. No. 23-00164 |

## COMPLAINT

Plaintiffs Hardwoods Specialty Products USLP, Paxton Hardwoods LLC and Rugby Holdings LLC dba Rugby Architectural Building Products, by and through their counsel, allege and state as follows:

### I.   PROCEEDING UNDER REVIEW

1.   This action seeks judicial review of the final scope ruling determination and affirmative final determination of circumvention issued by the U.S. Department of Commerce ("Commerce") on July 14, 2023 concerning the antidumping ("AD") and countervailing duty ("CVD") orders on certain hardwood plywood products from China covering exports from Vietnam. Certain Hardwood Plywood Products From the People's Republic of China: Final Scope Determination and Affirmative Final Determination of Circumvention of the Antidumping and Countervailing Duty Orders, 88 Fed. Reg. 46,740 (July 20, 2023) ("Final Determination"), and accompanying Issues and Dec. Mem. (July 14, 2023) ("Final I&D Mem.").

1

## II.   JURISDICTION AND STANDARD OF REVIEW

2.      Plaintiffs bring this action pursuant to the Tariff Act of 1930, as amended (the "Act"), section 516a(a)(2)(B)(vi), 19 U.S.C. § 1516a(a)(2)(B)(vi).  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c).

3.      The standard of review, as set forth in section 516A(b)(1)(B)(i) of the Act, 19 U.S.C. § 1516a(b)(1)(B)(i), is whether the determinations, findings or conclusions of Commerce are "unsupported by substantial evidence on the record, or otherwise not in accordance with law."

## III.   STANDING

4.      Plaintiffs are importers of the merchandise Commerce found to be circumventing the Orders on hardwood plywood from China.  See Final Determination, 88 Fed. Reg. at 46,740, and accompanying Final I&D Mem.; see also Certain Hardwood Plywood Products from the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value, and Antidumping Duty Order, 83 Fed. Reg. 504 (Jan. 4, 2018) ("AD Order"); Certain Hardwood Plywood Products from the People's Republic of China: Countervailing Duty Order, 83 Fed. Reg. 513 (Jan. 4, 2018) ("CVD Order") (collectively, the "Orders").

5.      Plaintiffs were parties to the proceeding that led to the contested determination in that they filed case and rebuttal briefs and participated in the hearing held by Commerce.  Plaintiffs are, therefore, interested parties within the meaning of 19 U.S.C. § 1677(9)(A) and have standing to commence this action pursuant to 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d).

## IV.   TIMELINESS OF THIS ACTION

6.      Plaintiffs commenced this action by filing a summons on August 14, 2023, which was within thirty days after the date of mailing of Commerce's ruling.  See 19 U.S.C. § 1516a(a)(2)(A)(ii); Summons (Aug. 4, 2023), ECF No. 1.

7. Pursuant to 28 U.S.C. § 2636(c), a complaint in a civil action brought under 28 U.S.C. § 1581(c) must be filed in accordance with Rule 3(a)(2) of the Rules of the U.S. Court of International Trade, requiring that a complaint be filed within thirty days of the summons. This complaint is therefore timely filed pursuant to 19 U.S.C. § 1516a(a)(2)(A) and Rule 3(a)(2).

## V.   STATEMENT OF FACTS

8. On January 4, 2018, Commerce issued the Orders on hardwood plywood from China. The Orders describe the scope as follows:

> The merchandise covered by the *Orders* is hardwood and decorative plywood, and certain veneered panels as described below. For purposes of this proceeding, hardwood and decorative plywood is defined as a generally flat, multilayered plywood or other veneered panel, consisting of two or more layers or plies of wood veneers and a core, with the face and/or back veneer made of non-coniferous wood (hardwood) or bamboo. The veneers, along with the core may be glued or otherwise bonded together. Hardwood and decorative plywood may include products that meet the American National Standard for Hardwood and Decorative Plywood, ANSI/HPVA HP- 1-2016 (including any revisions to that standard).

> For purposes of the *Orders*, a "veneer" is a slice of wood regardless of thickness which is cut sliced or sawed from a log, bolt, or flitch. The face and back veneers are the outermost veneer of wood on either side of the core irrespective of additional surface coatings or covers as described below.

> The core of hardwood and decorative plywood consists of the layer or layers of one or more material(s) that are situated between the face and back veneers. The core may be composed of a range of materials, including but not limited to hardwood, softwood, particleboard, or medium density fiberboard (MDF).

> All hardwood plywood is included within the scope of the *Orders* regardless of whether or not the face and/or back veneers are surface coated or covered and whether or not such surface coating(s) or covers obscures the grain, textures, or markings of the wood. Examples of surface coatings and covers include, but are not limited to: ultra violet light cured polyurethanes; oil or oil-modified or water based polyurethanes; wax; epoxy-ester finishes; moisture-cured urethanes; paints; stains; paper; aluminum; high pressure laminate; MDF; medium density overlay (MDO); and phenolic film. Additionally, the face veneer of hardwood plywood may be sanded; smoothed or given a "distressed" appearance through such methods as hand-scraping or wire brushing. All hardwood plywood is included within the scope even if it is trimmed; cut-to-size; notched; punched; drilled; or has underwent other forms of minor processing.

All hardwood and decorative plywood is included within the scope of the *Orders*, without regard to dimension (overall thickness, thickness of face veneer, thickness of back veneer, thickness of core, thickness of inner veneers, width, or length). However, the most common panel sizes of hardwood and decorative plywood are 1219 x 1829 mm (48 x 72 inches), 1219 x 2438 mm (48 x 96 inches), and 1219 x 3048 mm (48 x 120 inches).

Subject merchandise also includes hardwood and decorative plywood that has been further processed in a third country, including but not limited to trimming, cutting, notching, punching, drilling, or any other processing that would not otherwise remove the merchandise from the scope of the *Orders* if performed in the country of manufacture of the in-scope product.

The scope of these *Orders* excludes the following items: (1) structural plywood (also known as "industrial plywood" or "industrial panels") that is manufactured to meet U.S. Products Standard PS 1-09, PS 2-09, or PS 2-10 for Structural Plywood (including any revisions to that standard or any substantially equivalent international standard intended for structural plywood), and which has both a face and a back veneer of coniferous wood; (2) products which have a face and back veneer of cork; (3) multilayered wood flooring, as described in the antidumping duty and countervailing duty orders on Multilayered Wood Flooring from the People's Republic of China, Import Administration, International Trade Administration. See Multilayered Wood Flooring from the People's Republic of China, 76 FR 76690 (December 8, 2011) (amended final determination of sales at less than fair value (LTFV) and AD order), and Multilayered Wood Flooring from the People's Republic of China, 76 FR 76693 (December 8, 2011) (countervailing duty order), as amended by Multilayered Wood Flooring from the People's Republic of China: Amended Antidumping and Countervailing Duty Orders, 77 FR 5484 (February 3, 2012); (4) multilayered wood flooring with a face veneer of bamboo or composed entirely of bamboo; (5) plywood which has a shape or design other than a flat panel, with the exception of any minor processing described above; (6) products made entirely from bamboo and adhesives (also known as "solid bamboo"); and (7) Phenolic Film Faced Plyform (PFF), also known as Phenolic Surface Film Plywood (PSF), defined as a panel with an "Exterior" or "Exposure 1" bond classification as is defined by The Engineered Wood Association, having an opaque phenolic film layer with a weight equal to or greater than 90g/m3 permanently bonded on both the face and back veneers and an opaque, moisture resistant coating applied to the edges.

Excluded from the scope of these *Orders* are wooden furniture goods that, at the time of importation, are fully assembled and are ready for their intended uses. Also excluded from the scope of the *Orders* is "ready to assemble" (RTA) furniture. RTA furniture is defined as (A) furniture packaged for sale for ultimate purchase by an end-user that, at the time of importation, includes 1) all wooden components (in finished form) required to assemble a finished unit of furniture, 2) all accessory

parts (e.g., screws, washers, dowels, nails, handles, knobs, adhesive glues) required to assemble a finished unit of furniture, and 3) instructions providing guidance on the assembly of a finished unit of furniture; (B) unassembled bathroom vanity cabinets, having a space for one or more sinks, that are imported with all unassembled hardwood and hardwood plywood components that have been cut-to-final dimensional component shape/size, painted or stained prior to importation, and stacked within a singled shipping package, except for furniture feet which may be packed and shipped separately; or (C) unassembled bathroom vanity linen closets that are imported with all unassembled hardwood and hardwood plywood components that have been cut-to-final dimensional shape/size, painted or stained prior to importation, and stacked within a single shipping package, except for furniture feet which may be packed and shipped separately.

Excluded from the scope of these *Orders* are kitchen cabinets that, at the time of importation, are fully assembled and are ready for their intended uses.  Also excluded from the scope of the *Orders* are RTA kitchen cabinets. RTA kitchen cabinets are defined as kitchen cabinets packaged for sale for ultimate purchase by an end-user that, at the time of importation, includes 1) all wooden components (in finished form) required to assemble a finished unit of cabinetry, 2) all accessory parts (*e.g.*, screws, washers, dowels, nails, handles, knobs, hooks, adhesive glues) required to assemble a finished unit of cabinetry, and 3) instructions providing guidance on the assembly of a finished unit of cabinetry.

Excluded from the scope of these *Orders* are finished table tops, which are table tops imported in finished form with pre-cut or drilled openings to attach the underframe or legs.  The table tops are ready for use at the time of import and require no further finishing or processing.

Excluded from the scope of the *Orders* are finished countertops that are imported in finished form and require no further finishing or manufacturing.

Excluded from the scope of these *Orders* are laminated veneer lumber door and window components with (1) a maximum width of 44 millimeters, a thickness from 30 millimeters to 72 millimeters, and a length of less than 2413 millimeters (2) water boiling point exterior adhesive, (3) a modulus of elasticity of 1,500,000 pounds per square inch or higher, (4) finger-jointed or lap-jointed core veneer with all layers oriented so that the grain is running parallel or with no more than 3 dispersed layers of veneer oriented with the grain running perpendicular to the other layers; and (5) top layer machined with a curved edge and one or more profile channels throughout.

Excluded from the scope of these *Orders* are certain door stiles and rails made of LVL that have a width not to exceed 50 millimeters, a thickness not to exceed 50 millimeters, and a length of less than 2,450 millimeters.

Imports of hardwood plywood are primarily entered under the following HTSUS subheadings:    4412.10.0500;   4412.31.0520;   4412.31.0540;   4412.31.0560;

5

4412.31.0620;  4412.31.0640;  4412.31.0660;  4412.31.2510;  4412.31.2520;
4412.31.2610;  4412.31.2620;  4412.31.4040;  4412.31.4050;  4412.31.4060;
4412.31.4075;  4412.31.4080;  4412.31.4140;  4412.31.4150;  4412.31.4155;
4412.31.4160;  4412.31.4180;  4412.31.5125;  4412.31.5135;  4412.31.5155;
4412.31.5165;  4412.31.5175;  4412.31.5235;  4412.31.5255;  4412.31.5265;
4412.31.5275;  4412.31.6000;  4412.31.6100;  4412.31.9100;  4412.31.9200;
4412.32.0520;  4412.32.0540;  4412.32.0565;  4412.32.0570;  4412.32.0620;
4412.32.0640;  4412.32.0670;  4412.32.2510;  4412.32.2525;  4412.32.2530;
4412.32.2610;  4412.32.2630;  4412.32.3125;  4412.32.3135;  4412.32.3155;
4412.32.3165;  4412.32.3175;  4412.32.3185;  4412.32.3255;  4412.32.3255;
4412.32.3265;  4412.32.3275;  4412.32.3285;  4412.32.5600;  4412.32.5700;
4412.33.0620;  4412.33.0640;  4412.33.0670;  4412.33.2630;  4412.33.3235;
4412.33.3255;  4412.33.3265;  4412.33.3275;  4412.33.3285;  4412.33.5700;
4412.34.2600;  4412.34.3235;  4412.34.3255;  4412.34.3265;  4412.34.3275;
4412.34.3285;  4412.34.5700;  4412.39.1000;  4412.39.3000;  4412.39.4011;
4412.39.4012;  4412.39.4019;  4412.39.4031;  4412.39.4032;  4412.39.4039;
4412.39.4051;  4412.39.4052;  4412.39.4059;  4412.39.4061;  4412.39.4062;
4412.39.4069;  4412.39.5010;  4412.39.5030;  4412.39.5050;  4412.94.1030;
4412.94.1050;  4412.94.3105;  4412.94.3111;  4412.94.3121;  4412.94.3141;
4412.94.3161;  4412.94.3175;  4412.94.4100;  4412.99.0600;  4412.99.1020;
4412.99.1030;  4412.99.1040;  4412.99.3110;  4412.99.3120;  4412.99.3130;
4412.99.3140;  4412.99.3150;  4412.99.3160;  4412.99.3170;  4412.99.4100;
4412.99.5115; and 4412.99.5710.

Imports of hardwood plywood may also enter under HTSUS subheadings 4412.10.9000;  4412.94.5100;  4412.94.9500;  4412.99.6000;  4412.99.7000; 4412.99.8000; 4412.99.9000; 4412.99.9500; 9403.90.7005; 9403.90.7010; and 9403.90.7080. While the HTSUS subheadings are provided for convenience and customs purposes, the written description of the scope of these *Orders* is dispositive.

Certain Hardwood Plywood Products From the People's Republic of China: Preliminary Scope Determination and Affirmative Preliminary Determination of Circumvention of the Antidumping and Countervailing Duty Orders, 87 Fed. Reg. 45,753 (Jul. 29, 2022) ("Prelim. Determination") and accompanying Prelim. Dec. Mem. at 4-7 ("Prelim. Dec. Mem."); see also AD Order, 83 Fed. Reg. at 512-13; CVD Order, 83 Fed. Reg. at 515-16.

9.      On February 25, 2020, the Coalition for Fair Trade in Hardwood Plywood (the "Petitioner") filed a Request for Scope Ruling/Anti-Circumvention Ruling asking Commerce to determine that hardwood plywood manufactured from Chinese-origin core veneers, multi-ply core

veneer panels, and/or veneer core platforms and assembled in Vietnam are covered by the scope

of the <u>Orders</u>.  <u>See</u> Letter on Behalf of Coalition to Commerce re: Request for Scope Ruling/Anti-

Circumvention Ruling at 16-22 (Feb. 25, 2020) (Public Version) ("Scope and Circumvention

Ruling Request").  In the alternative, Petitioner requested that if Commerce determined that the

product is not covered by the scope of the <u>Orders</u>, then Commerce should find that the subject

merchandise is circumventing the <u>Orders</u> and should be included in the scope based on section

781(b) of the Act, 19 U.S.C. § 1677j(b).  <u>See</u> Scope and Circumvention Ruling Request at 31.

10.    In its Scope and Circumvention Ruling Request, the Petitioner described the

merchandise subject to its request as follows:

> Chinese hardwood plywood is undergoing minor assembly and finishing in
> Vietnam and entering the United States as Vietnamese-origin plywood for the
> express purpose of avoiding AD/CVD duties. Specifically, Petitioner has learned
> that Chinese producers are manufacturing the face veneers, back veneers, and core
> veneers for plywood that would fall within the scope of the <u>Orders</u> in China and are
> then shipping the face and back veneers and either an assembled core or individual
> core veneers for layup to Vietnam for mere assembly into plywood before
> importation into the United States. The finished plywood imported into the United
> States from Vietnam otherwise meets the description of subject merchandise.

<u>Id.</u> at 2; <u>see also</u> <u>id.</u> at 30.

11.    The Petitioner argued that there was evidence to show that Chinese hardwood

plywood that otherwise meets the description of the scope was improperly entering the United

States as non-subject merchandise.  <u>See</u> <u>id.</u> at 8.  The Petitioner further claimed that Commerce

did not need to consider the criteria set forth in 19 C.F.R. § 351.225(k)(1) or the additional factors

provided in 19 C.F.R. § 351.225(k)(2) because the plain scope language was dispositive.  <u>See</u>

Scope and Circumvention Ruling Request at 9.

12.     In its Scope and Circumvention Ruling Request, the Petitioner also argued that the products at issue are subject to the Orders pursuant to section 781(b)(1) of the Act, 19 U.S.C. § 1677j(b)(1).  See Scope and Circumvention Ruling Request at 33.

13.     On June 17, 2020, Commerce initiated scope and country-wide anti-circumvention inquiries, pursuant to 19 C.F.R. § 351.225(c) and (h) and section 781(b) of the Act, 19 U.S.C. 1677j(b).  See Prelim. Dec. Mem. at 2; see also Certain Hardwood Plywood Products from the People's Republic of China: Initiation of Anti-circumvention Inquiries and Scope Inquiries on the Antidumping Duty and Countervailing Duty Orders; Vietnam Assembly, 85 Fed. Reg. 36,530 (June 17, 2020) ("Initiation Notice").  Commerce initiated its inquiries on five production scenarios:

> (1) face/back veneers and assembled core components (e.g., veneer core platforms) manufactured in China; (2) fully assembled veneer core platforms manufactured in China and face/back veneer produced in Vietnam or third countries; (3) multi-ply panels of glued core veneers manufactured in China and combined in Vietnam to produce veneer core platforms and combined with either face and/or back veneer produced in China, Vietnam, or a third country; (4) face/back veneers and individual core veneers produced in China; and (5) individual core veneers manufactured in China and processed into a veneer core platform in Vietnam and combined with face/back veneer produced in Vietnam or a third country.

Prelim. Determination, 87 Fed. Reg. at 45,754; see also Prelim. Dec. Mem. at 7.

14.     Commerce clarified the scope of the inquiries covered:

> hardwood plywood exported to the United States that is composed of: (1) face veneer, back veneer, and assembled core components (e.g., veneer core platforms) manufactured in China and assembled in Vietnam; (2) fully assembled veneer core platforms manufactured in China that are combined in Vietnam with face and/or back veneers produced in Vietnam or third countries; and (3) multi-ply panels of glued core veneers manufactured in China that are combined in Vietnam to produce veneer core platforms and combined with either a face and/or back veneer produced in China, Vietnam, or a third country.

Prelim. Determination, 87 Fed. Reg. at 45,754.  Commerce further stated that "{t}he merchandise subject to these anticircumvention and scope inquiries does not include core veneers fully

produced in Vietnam or a third-country that are assembled into a veneer core platform in Vietnam and combined with a face and back veneer produced in China" (referenced herein as "safe harbor merchandise").  Mem. from Kabir Archuletta to The File re: Clarification of Merchandise Subject to Anti-Circumvention and Scope Inquiries at 2 (July 9, 2020) (Public Document) ("Clarification of Merchandise Mem.").

15.     Commerce did not select mandatory respondents during the course of its scope/circumvention proceeding.  Instead, Commerce identified Vietnamese manufacturers and exporters with shipments under relevant HTSUS subheadings between December 8, 2016 and March 31, 2020 as potential respondents "based on information submitted by the petitioner, publicly-available information from the internet, and entries of appearances submitted by interested parties."  Prelim. Dec. Mem. at 3.  Commerce also relied on relevant entry data from U.S. Customs and Border Protection ("CBP").  See id.  Commerce issued quantity and value ("Q&V") questionnaires to Vietnamese manufacturers and exporters on September 10, 2020.  See id.  While eight companies did not respond, fifty-one companies responded to the Q&V questionnaires, stating that they did not produce hardwood plywood under the five scenarios subject to this inquiry.  See id.; see also id. at App. I (listing the companies that responded to the Q&V questionnaire as well as those that did not respond).

16.     Commerce issued two supplemental Q&V questionnaires, the first of which was issued to fifty-one companies on February 2, 2021 – more than four months after Commerce's timely receipt of the initial questionnaire responses.  See Prelim. Dec. Mem. at 3.  Forty-six companies submitted timely responses.  See id.  Commerce issued a second supplemental Q&V questionnaire on February 22, 2021 to the Government of Vietnam ("GOV"), to which the GOV timely responded on June 15, 2021.  See id.  On June 15, 2021, Commerce issued second

supplemental questionnaires to the forty-six companies, and forty-five companies submitted timely responses.  See id.  Commerce issued another supplemental questionnaire to the GOV on June 15, 2021, and the GOV submitted its response on July 21, 2021.  See id.  at 4.

17.     On July 29, 2022, over two years after the initiation of the scope and circumvention inquiry, Commerce issued its Preliminary Determination, making a country-wide affirmative scope and circumvention determination.  See Prelim. Determination, 87 Fed. Reg. at 45,754; Prelim. Dec. Mem. at 26-27.  Commerce preliminarily determined, based on application of adverse facts available ("AFA"), that thirty-six companies produced plywood under all five scenarios subject to the inquiry (i.e., shipped hardwood plywood that was assembled in Vietnam using certain Chinese inputs).  See Prelim. Dec. Mem. at 26-27.

18.     Commerce relied on AFA with respect to twenty-two companies, determining that their responses contained discrepancies, inconsistencies and/or misleading information that could not be relied upon.  See Prelim. Determination, 87 Fed. Reg. at 45,754; see also Prelim. Dec. Mem. at 12-14.  Specifically, Commerce stated that these twenty-two companies failed to provide information regarding the nature of their affiliation with Chinese companies, failed to identify or provided inconsistent responses regarding all species of wood used in the hardwood plywood and/or failed to provide documentation to support claims that they imported only face or back veneers from China.  See Prelim. Dec. Mem. at 10, 12.  Commerce stated that certain respondents initially claimed that they did not source inputs from Vietnamese resellers, but later acknowledged or provided information showing that they did source inputs from Vietnamese resellers.  See id.  Further, Commerce found that these companies sometimes claimed that they did not have imports from China during the inquiry period, in spite of the entry data provided by the GOV indicating otherwise.  See id.  For other companies, Commerce determined that they failed to disclose

affiliation with Chinese companies.  Based on these perceived discrepancies, pursuant to sections 776(a)(2)(A)-(C) of the Act, 19 U.S.C. § 1677d(a)(2), Commerce "preliminarily {found} that these companies withheld information requested by Commerce."  Prelim. Dec. Mem. at 12.  Commerce further determined that because the companies allegedly provided inconsistent and unreliable data and "failed to provide the information by the requested deadlines," they had failed to cooperate and  the application of AFA was proper.  See id. at 12-13; see also Mem. from Kabir Archuletta to File re: Application of Adverse Facts Available for the Preliminary Determination (Jul. 22, 2022) (Public Version) ("Prelim. AFA Mem.") (further detailing Commerce's reasoning for its AFA determination).  Commerce did not, however, provide any notice to such companies or any opportunity to remedy or explain the alleged deficiencies.

19.     In making its AFA determinations for these twenty-two companies, in many instances, Commerce relied on discrepancies in the data submitted by the GOV.  See Final Dec. Mem. at 66, 76.  The GOV, however, explained that the data it submitted did not include whether an imported item was ultimately exported to the United States or incorporated in the plywood that was resold in Vietnam or exported to third countries during the inquiry period.  See id. at 66.

20.     With respect to fourteen companies, Commerce relied on AFA based on their alleged failure to respond.  See Prelim. Determination, 87 Fed. Reg. at 45,754; Prelim Dec. Mem. at 10, 13.  Commerce preliminarily determined that the fourteen companies that did not respond to its requests for information failed to provide necessary information, withheld information requested by Commerce, failed to provide information in a timely manner and significantly impeded this proceeding by not submitting the requested information.  See Prelim. Dec. Mem. at 13.  Commerce reasoned "that by failing to provide the requested information, the non-responsive companies did not cooperate to the best of their abilities in these inquiries."  Id.  Commerce stated

that "the non-responsive companies neither indicated that they were having difficulty providing the requested information, nor did they request to submit the information in an alternate form."  Id.

21.     In its Preliminary Determination, Commerce affirmatively determined that the first three production scenarios fell within the scope of the AD/CVD orders on hardwood plywood. See Prelim. Determination, 87 Fed. Reg. at 45,754.  In making this determination, Commerce relied in part on an earlier determination it had made for a single Vietnamese exporter, Vietnam Finewood Co. ("Finewood").  See Prelim. Dec. Mem. at 9, 14-15 (citing Mem. From Nicolas Mayora to James Maeder re: Antidumping Duty and Countervailing Duty Orders on Certain Hardwood Plywood Products from the People's Republic of China, Enforcement and Protect Act (EAPA) Investigation No. 7252: Final Scope Ruling (Jan. 21, 2022) (Public Version) ("Finewood Scope Ruling")).  Notably, the Finewood Scope Ruling was later found by the Court not to be supported by substantial evidence and otherwise not in accordance with law.  See Vietnam Finewood Co. v. United States, __ CIT __, 633 F. Supp. 3d 1243, 1262 (2023).   For production scenarios two and three, Commerce relied on a combination of information submitted by the Petitioner, information submitted in the Finewood Scope Ruling and AFA to determine that a "significant portion of the cost of producing hardwood plywood is in the materials for producing the veneers" and that the "assembly of such materials in Vietnam account for a very small proportion of the value of the hardwood plywood imported into the United States."  Prelim. Dec. Mem. at 15.

22.     Commerce also made a preliminary affirmative circumvention determination for the remaining two production scenarios based on the five statutory factors in section 781(b) of the Act, 19 U.S.C. § 1677j(b).  See Prelim. Determination, 87 Fed. Reg. at 45,754.  In conducting its statutory analysis, Commerce examined (1) whether the Vietnam product was of the same class or

kind of the merchandise subject to the Orders; (2) whether the merchandise was completed or assembled in Vietnam from merchandise that is subject to the Orders prior to the importation into the United States; (3) the nature of the assembly process and the extent of production facilities in Vietnam and whether the process of assembly or completion in Vietnam was minor or insignificant; (4) the value of the merchandise produced in China as it related to the value of the merchandise exported to the United States; and (5) whether action in was necessary to prevent evasion of the Orders.  See Prelim. Dec. Mem. at 17.  Commerce ultimately determined that the subject merchandise was of the same class or kind as merchandise subject to the Orders and that this hardwood plywood "was assembled and completed in Vietnam using Chinese-origin hardwood plywood inputs (including face/back and/or core veneers)."  Id. at 18-19.

23.    Commerce examined the following factors in determining whether the process of assembly or completion in Vietnam was minor or insignificant:

> A) the level of investment in the third country; B) the level of research development (R&D) in the third country; (C) the nature of the production process in the third country; (D) the extent of production facilities in the third country; and (E) whether the value of processing performed in the third country represents a small proportion of the value of the merchandise imported into the United States.

Id. at 17.  Commerce found that a "significant majority of the total costs of the MLE associated . . . {was} accounted for by the wood veneers."  Id. at 20.  Further, Commerce concluded that the core veneers made up "the vast majority of the value of the wood materials."  Id.

In determining whether circumvention of the Orders occurred, Commerce also examined additional factors:

> A) the pattern of trade, including sourcing patterns,
> B) whether the manufacturer or exporter of the merchandise is affiliated with the person who, in the third country, uses the merchandise to complete or assemble the merchandise which is subsequently imported into the United States; and
> C) whether imports of the merchandise into the third country have increased after the initiation of the AD or CVD investigation that resulted in the issuance of an order.

Id. at 25-26; see also id. at 10.

In its analysis of the additional factors, Commerce found that the evidence provided by the Petitioner showed changes in the pattern of trade, specifically finding that exports of hardwood plywood to the United States "decreased substantially" and that imports from Vietnam to the United States increased by nearly 950 percent.  Id. at 25.  Commerce determined that "at least seven of the uncooperative companies {were} affiliated with producers and exporters of hardwood in China."  Id. (emphasis added).  Commerce also noted that there had been a significant increase in imports over the years since the Orders were published.  See id. at 26.

24.     Commerce determined that hardwood plywood was being assembled in Vietnam using Chinese cores applying an adverse inference based on information from the GOV, an affidavit from Petitioner claiming "that certain of the poplar core plywood exported to the United States from Vietnam appears identical to Chinese hardwood plywood and is used for the same applications" and that "Vietnam is devoid of {} poplar plantations" and by noting that the thickness of veneers imported by various Vietnamese companies from China demonstrated that imports of plywood veneers from China were core veneers and not face/back veneers.  Id. at 18-20.

25.     In finding that the processing in Vietnam was minor or insignificant, Commerce relied on information submitted on the record by Petitioner while ignoring contrary record evidence from the respondents.  See id. at 20.  Commerce acknowledged that the record lacked information on the factors it analyzes when making a minor or insignificant determination.  See, e.g., id. at 21-22.  For example, Commerce relied on information submitted during the Finewood Scope Ruling to determine that a significant majority of total costs associated with hardwood plywood production was accounted for by the core wood veneers.  See id. at 20.  This information, however, was outdated and unrelated to companies under investigation.  See Mem. From Kabir

Archuletta to File re: Production Costs Analysis and Data for the Preliminary Determination at 2, n. 5 (July 22, 2022) (Public Version) (citation omitted) (showing that the data relied upon was from 2019).  Information relied on by Commerce regarding Finewood also included information on plywood cores produced using so-called two-ply core veneers imported from China.  Two-ply refers to two layers of core veneers glued together in China.  See generally Finewood Scope Ruling.  Significantly, no Vietnamese company reported producing inquiry merchandise in their questionnaire responses.  See Final I&D Mem. at 21.

26.     In determining whether to include merchandise assembled or completed in Vietnam within the scope of an order, Commerce considered three additional factors pursuant to section 781(b)(3) of the Act, 19 U.S.C. § 1677j(b)(3).  See Prelim. Dec. Mem. at 25-26.  For the first factor, pattern of trade, Commerce cited to evidence from Petitioner indicating that imports from China decreased and imports from Vietnam increased.  See id. at 25.  Commerce stated that "{t}he data also show that imports from Vietnam to the United States have increased nearly 950 percent." Id.  With respect to the second factor, affiliation, Commerce found that information on the record indicates that the uncooperative respondents are affiliated with producers and exporters of hardwood plywood in China.  See id.  Commerce then considered the third factor, increased imports, finding that based on publicly available import data from Petitioners, imports of Chinese components had increased in Vietnam.  See id. at 26.

27.     Commerce ultimately made a country-wide circumvention determination based on AFA due to thirty-six companies' alleged failure to cooperate or fully cooperate, "preliminarily concluding that these companies produced hardwood plywood under all five production scenarios subject to these inquiries."  Id. at 27.  Commerce reasoned that these companies constituted a majority of shipments of hardwood plywood exported from Vietnam to the United States, and "that

imports of hardwood plywood from Vietnam {} significantly increased during the inquiry period." Id.

28.     Commerce also established a certification regime for exporters and importers of hardwood plywood completed in Vietnam using non-Chinese origin hardwood plywood inputs, allowing such companies to certify that their imports/exports are not subject to the scope of the Orders.  See Prelim. Determination, 87 Fed. Reg. at 45,754; Prelim. Dec. Mem. at 27.  Commerce's cash deposit instructions did not provide an express exclusion for so-called "safe harbor merchandise," meaning plywood panels produced in Vietnam whose only Chinese content consisted of the outer face and back veneers.  See Customs Instructions No. 2220409 (Aug. 8, 2022) (Public Document).  Commerce's certification regime did not allow the thirty-six companies for which Commerce had applied AFA to certify that their entries were not subject to investigations as safe harbor merchandise and required cash deposits at the applicable rate.  See Prelim. Determination, 87 Fed. Reg. at 45,755; Prelim. Dec. Mem. at 13.  Commerce indicated that these thirty-six so-called blacklist companies "may demonstrate in a future segment of the proceedings {either a changed circumstances review or administrative review}."  Prelim. Dec. Mem. at 27-28.

29.     On October 1, 2020, Vietnam Zhongjia Wood Company Limited ("Zhongjia") and TL Trung Viet Company Limited ("TL Trung") provided timely responses to Commerce's initial Q&V questionnaire.  See Letter on Behalf of Zhongjia to Dep't of Commerce re: Quantity and Value Questionnaire Response (Oct. 1, 2020) (Public Version);  Letter on Behalf of TL Trung to Dep't of Commerce re: Quantity and Value Questionnaire Response (Oct. 1, 2020) (Public Version).  Zhongjia and TL Trung each responded to Commerce's supplemental Q&V questionnaires on March  8, 2021 and July 9, 2021.  See Letter on Behalf of Zhongjia to Dep't of Commerce re: Quantity & Value Supplemental Questionnaire Response (Mar. 8, 2021) (Public

Version); Letter on Behalf of Zhongjia to Dep't of Commerce re: Q&V Second Supplemental Questionnaire (July 9, 2021) (Public Version); see also Letter on Behalf of TL Trung to Dep't of Commerce re: Quantity & Value Supplemental Questionnaire Response (Mar. 8, 2021) (Public Version); Letter on Behalf of TL Trung to Dep't of Commerce re: Q&V Second Supplemental Questionnaire (July 9, 2021) (Public Version).

30.     On October 1, 2020, Thang Long Wood Panel Company Ltd. ("Thang Long") timely responded to Commerce's initial Q&V questionnaire.  See Letter on Behalf of Thang Long to Dep't of Commerce re: Submission of Quantity and Value Response (Oct. 1, 2020) (Public Version).  Although Thang Long did not respond to Commerce's subsequent supplemental Q&V questionnaires, following the Preliminary Determination Thang Long explained to Commerce that it had not responded because it did not think that its responses were required because it "did not export inquiry merchandise to the United States at the time Commerce was requesting information and due to communication difficulties with another company."  Final I&D Mem. at 104; see also Letter on Behalf of Thang Long to Dep't of Commerce re: Case Briefs/Comments on Preliminary Scope Determination and Affirmative Preliminary Determination of Circumvention of the Antidumping and Countervailing Duty Orders (Aug. 19, 2022) (Public Document) ("Thang Long Prelim. Determination Cmts.").  Once it became apparent that Commerce required responses to its supplemental questionnaires even where a respondent did not produce inquiry merchandise, Thang Long promptly provided Commerce with all necessary information responding to Commerce's supplemental questionnaires.  See Thang Long Prelim. Determination Cmts. at Ex. 1-5.

31.     Between August 1 and 4, 2022 multiple parties filed post preliminary and ministerial error comments.  See Final I&D Mem. at 4.  In these filings, parties requested that Commerce 1) "reopen the record to allow the submission of {new actual information}, 2) modify

the instructions sent to {CBP} to exclude certain non-inquiry merchandise, and 3) extend the deadline for importers and exporters to certify their entries . . . not produced under one of the five scenarios and to modify the cash deposit instructions." Id.  Commerce rejected these requests and declined to issue supplemental questionnaires and rejected post-preliminary factual information submitted by parties clarifying any discrepancies identified by Commerce as untimely.  See id. at 5.  Commerce, further, declined to modify its cash deposit instructions to exclude safe harbor merchandise.  See id.

32.    Between October 17 and 25, 2022, Commerce conducted on-site verifications of eleven respondents in Vietnam.  See id.

33.    On January 9, 2023, Plaintiffs submitted their case brief for Commerce's consideration contesting Commerce's scheduling of the proceeding, failure to explain its departure from its typical mandatory respondent selection practice and use of AFA.  See id. at 3, n. 7. Plaintiffs submitted a rebuttal brief on February 1, 2023.  See id. at 4, n. 8.; see also id. at 15, 47, 53-54, 113, 169, 178 (detailing additional arguments made by the Plaintiffs on Commerce's scheduling, failure to explain and use of AFA).  Plaintiffs also contested Commerce's illegal rejection of ministerial error allegations and attempts to clarify alleged deficiencies for a number of Vietnamese respondents generally, as well as with specific reference to some exporters such as Lechenwood Viet Nam Company Limited ("Lechenwood") (including by incorporating by reference its August 1, 2022 Ministerial Error Comments expressly challenging Commerce's application of AFA to Lechenwood).  See id. at 3-4, nn. 7-8; see also id. at 15-16, 48, 54, 114, 166, 169-70, 178.

34.    On February 15, 2023, the Plaintiffs participated in a hearing before Commerce. See Final I&D Mem. at 5.

35.     Commerce continued to leave companies in limbo following its <u>Preliminary Determination</u> by extending the deadline for its <u>Final Determination</u> an additional five times between September 2022 and May 2023.  <u>See</u> Final I&D Mem. at 5 (showing that Commerce extended its deadline for issuing its <u>Final Determination</u> for a total of <u>eight</u> extensions).   To Plaintiffs' knowledge, Commerce has never taken longer to resolve a scope/circumvention inquiry than in the contested determination.

36.     In its <u>Final Determination</u>, Commerce continued to rely on AFA to determine that thirty-seven companies produced hardwood plywood under all five production scenarios.  <u>See</u> <u>Final Determination</u>, 88 Fed. Reg. 46,740; <u>see also</u> <u>id.</u> at 46,743, App. V (providing the list of companies that Commerce determined failed to cooperate).  Commerce added certain companies to the blacklist based on their alleged failure at verification, such as Zhongjia, TL Trung and VVAT Company Limited ("VVAT").  <u>See</u> Final I&D Mem. at 165-66.  Commerce determined that Zhongjia did not act to the best of its ability, "because it did not put forth the maximum effort to provide all suppliers and core veneer purchases when requested by Commerce."  <u>Id.</u> at 165.  Commerce further determined that it was appropriate to apply AFA to TL Trung and VVAT "because they <u>declined to participate</u> in verification."  <u>Id.</u> at 166 (emphasis added).

37.     In its <u>Final Determination</u>, however, Commerce determined to no longer apply AFA to An An Plywood Joint Stock Company and Greatwood Hung Yen Joint Stock Company. <u>See</u> <u>id.</u> at 103.  Commerce, in its revised finding, determined that the arguments of these companies "resolved concerns."  <u>Id.</u> (citing to Prelim. AFA Mem.).

38.     In its response to the second supplemental questionnaire, the GOV provided data on its imports from China into Vietnam under subheadings 4412 and 7708, including "names of importers and exporters, HS subheadings, the values and the quantities of the imports."  Final I&D

Mem. at 76.  In its own briefing, the GOV argued that Commerce should not have used this information in its <u>Final Determination</u>.  <u>See id.</u>  In its <u>Final Determination</u>, Commerce rejected this argument, stating that the data demonstrated that these companies "were not accurately reporting information about their Chinese Imports."  <u>Id.</u>

39.     In the <u>Final Determination</u>, Commerce revised its scope determination to find that first three production scenarios are not covered by the scope of the <u>Orders</u>.  <u>See Final Determination</u>, 88 Fed. Reg. 46,741.  Commerce acknowledged Court precedent from the <u>Finewood</u> case finding that that two-ply panels from China were not subject to the scope of the <u>Orders</u> because the scope "unambiguously covers products of three or more plies."  Final I&D Mem. at 10 (citing to <u>Vietnam Finewood Company Limited, et al., v. United States</u>, Consol. Court No. 22-00049, Slip Op. 23-58 at 20 (Ct. Intl. Trade April 20, 2023)).  Although Commerce no longer relied on the conclusion from its prior overturned determination with respect to the <u>Finewood</u> case, as stated previously, much of the data Commerce used were still from the invalidated Finewood Scope Ruling.

40.     Addressing the arguments that Commerce had improperly included safe harbor merchandise in the <u>Preliminary Determination</u>, Commerce stated that the purpose of the Scope Clarification Memorandum was only to clarify that certain merchandise was not subject to the inquiries, not to make a finding whether safe harbor merchandise "was subject to, or circumventing, the Orders."  <u>Id.</u> at 172.  Commerce stated that its "standard practice, with respect to inquiry merchandise that is indistinguishable on its face from non-inquiry merchandise at entry, {is} to establish certification programs that require parties to affirmatively declare, and maintain supporting documentation demonstrating, that the merchandise being entered is not the specific product(s) subject to the inquiry."  <u>Id.</u>

41.     Having retreated from its preliminary bases for considering products produced under scenarios one to three to be within the scope of the Orders, namely, the "two-ply" position found to be unlawful by the Court in the Finewood case, Commerce pivoted to reach the exact same outcome for a new reason.   Commerce revised its determination to find that products produced under all five of the production scenarios circumvented the Orders.   See Final Determination, 88 Fed. Reg. at 46,741.  In making an affirmative finding regarding the first three production scenarios, Commerce reasoned that "more of the production process for scenarios one, two, and three occur in China, and, therefore, the circumvention analysis outlined in the Preliminary Determination, which examined two scenarios with less production occurring in China, supports an affirmative circumvention determination for these three scenarios.  See Final I&D Mem. at 11.  Commerce therefore worked backwards from its original circumvention finding with respect to scenarios four and five to sweep in scenarios one to three.

42.     Much like it had in the Preliminary Determination, in determining that the process of assembly or completion in Vietnam was minor or insignificant, Commerce again relied on information submitted on the record by Petitioner regarding Finewood despite the Court overruling Commerce's prior conclusion in the Finewood case.  See, e.g., Final I&D Mem. at 12-13.

43.     To address procedural and equity concerns raised by the parties, Commerce expanded the period of review to include the earliest entry from Vietnam suspended as a result of the preliminary determination (June 17, 2020) through December 31, 2021.  See id. at 180; Final Determination, 88 Fed. Reg. at 46,741.  Commerce then decided to:

> 1. expand the {periods of review} of the 2022 {administrative reviews} up to the date of the earliest entry from Vietnam suspended as a result of our *Preliminary Determination*;
> 2. provide an opportunity for interested parties to request AD and/or CVD reviews of unliquidated/suspended entries of merchandise from Vietnam that entered during the expanded PORs (*i.e.*, before January 2022);

3. publish a supplementary notice of initiation for any additional requests for review received as a result of this final determination;

4. place CBP data on the record of the ongoing AD/CVD reviews for the expanded PORs and allow parties to comment; and

5. issue questionnaires to all parties under review in order to ascertain the quantity and value of their suspended entries of both subject and potentially non-subject hardwood plywood from Vietnam.

Final I&D Mem. at 181.

44.     Commerce also instructed "CBP to continue to suspend liquidation and require a cash deposit of estimated duties, at the applicable, rates on entries that are entered or withdrawn from warehouse for consumption on or after June 17, 2020." Final Determination, 88 Fed. Reg. at 46,741.  Commerce also continued the certification regime it established in the Preliminary Determination.  See id.

45.     Further, Commerce prohibited the thirty-seven blacklist companies found to have either failed to respond to its requests or to have provided unreliable information from participating in its certification regime.  See id. at 46,740.

46.     For those companies not eligible to participate in the certification regime, Commerce directed CBP to "suspend the entry and collect cash deposits for entries of merchandise produced and/or exported by these noncooperative companies at the AD rate established for the China-wide entity (183.36 percent) and the CVD rate established for all other Chinese producers and/or exporters (22.98 percent)." Id. at 46,741.  Commerce also prohibited the thirty-seven companies from certifying as to even safe harbor merchandise and declined to modify cash deposit instructions to exclude safe harbor merchandise.  See Final I&D Mem. at 172-174.

47.     Commerce further determined that any company ineligible for the certification regime could request a review of their eligibility to participate in the certification regime in the

ongoing administrative review and provided an additional opportunity for parties to request a review by fourteen days after publication.  See Final Determination, 88 Fed. Reg. at 46,741.

## VI.   STATEMENT OF THE CLAIMS

### COUNT I

48.     Plaintiffs incorporate herein by reference paragraphs 1-47 of this complaint.

49.     Commerce's affirmative circumvention finding was unsupported by substantial evidence and otherwise not in accordance with law because (a) Commerce failed to follow its past practice to select mandatory respondents leading to a sparce record that no reasonable mind might accept as adequate to support Commerce's affirmative circumvention determination; (b) the path of Commerce's decision was not supported by reasonable explanations given that Commerce relied on stale information from an entirely separate proceeding (in the earlier scope ruling on Finewood) that was later overturned by this Court and reversed on remand by Commerce; (c) despite the fact that no producer reported having produced subject merchandise in Vietnam, Commerce relied on a mere scintilla of evidence, including a flawed affidavit from Petitioner and Chinese export data, to find that inquiry merchandise is of the same class or kind of merchandise as the hardwood plywood subject to the Orders (i.e., plywood was being assembled in Vietnam using Chinese cores) and (d) to the extent any gap existed on the record, it was a fault of Commerce's own making given that Commerce failed to select mandatory respondents, and Commerce cannot lawfully use its own procedural deficiencies to ignore the significant record evidence that detracted from its conclusion that the process of assembly or completion of hardwood plywood in Vietnam was minor or insignificant.

### COUNT II

50.     Plaintiffs incorporate herein by reference paragraphs 1-49 of this complaint.

51.     Commerce's determination to brand certain companies as ineligible to certify that their products were not in scope or circumventing the Orders based on such perceived deficiencies as insufficient reporting of information or a relationship with Chinese companies, even when these products were not produced under any of the five listed scenarios, was unsupported by substantial evidence and otherwise not in accordance with law, because Commerce unreasonably overlooked or interpreted factual evidence and failed to comply with its statutory obligations under section 782(d) of the Act, 19 U.S.C. § 1677m(d), to provide the blacklist companies that it found had submitted deficient responses to its questionnaires with notice and an opportunity to correct their responses.

52.     Commerce's determination to apply AFA to certain companies, such that they are ineligible to certify that their products are not in scope or circumventing the Orders, was unsupported by substantial evidence and otherwise not in accordance with law because, once the information submitted by these blacklist companies is properly considered, the only reasonable reading of the record is that these blacklist companies can trace the country-of-origin of their inputs.

## COUNT III

53.     Plaintiffs incorporate herein by reference paragraphs 1-52 of this complaint.

54.     Commerce further abused its discretion in rejecting the lawful efforts by certain blacklist companies (and importers such as Shelter Forest International Acquisition, Inc.) to submit additional information to remedy the alleged inconsistencies and deficiencies in their questionnaire responses, which did not become apparent until after the Preliminary Determination, further rendering its decision unsupported by substantial evidence and otherwise not in accordance with law.

## COUNT IV

55.     Plaintiffs incorporate herein by reference paragraphs 1-54 of this complaint.

56.     Commerce's determination to apply AFA against Thang Long was unsupported by substantial evidence and otherwise not in accordance with law because Thang Long cooperated to the best of its ability with Commerce's investigation.  It was reasonable for Thang Long to presume that it did not need to respond to Commerce's supplemental questionnaires because it did not export inquiry merchandise to the United States when Commerce issued its supplemental questionnaires.  Commerce abused its discretion in not accepting information in two supplemental questionnaires responses submitted by Thang Long once it became aware of Commerce's perceived deficiencies in its response following the Preliminary Determination, further rendering Commerce's decision unsupported by substantial evidence and otherwise not in accordance with law.

## COUNT IV

57.     Plaintiffs incorporate herein by reference paragraphs 1-56 of this complaint.

58.     Commerce's determination to apply AFA against Zhongjia because it allegedly failed to report all of its suppliers in its questionnaire responses and to provide all the documentation requested by Commerce at verification was unsupported by substantial evidence and otherwise not in accordance with law because Commerce itself failed to provide a reasonable explanation for disregarding the majority of Zhongjia's responses at verification based on one limited issue.

## COUNT V

59.     Plaintiffs incorporate herein by reference paragraphs 1-58 of this complaint.

60.     Commerce's determination to apply AFA against TL Trung on the basis of certain perceived insufficiencies at verification was unsupported by substantial evidence and not in accordance with law because Commerce failed to provide a reasonable explanation for disregarding the majority of TL Trung's reasons indicating that it was unable to participate in verification because certain key individuals had left the company as a result of the amount of time that had passed between Commerce issuing its questionnaires and scheduling verifications.

## COUNT VI

61.     Plaintiffs incorporate herein by reference paragraphs 1-60 of this complaint.

62.     Commerce wrongfully failed to amend its certification regime and cash deposit instructions to exclude certain safe harbor merchandise that Commerce itself indicated was never intended to be covered by the scope and circumvention inquiries.

63.     By failing to follow its own decision made early in the proceeding that safe harbor merchandise was not subject to the inquiries, Commerce's determination was unsupported by substantial evidence and otherwise not in accordance with law.

## DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF

WHEREFORE, and as challenged herein, Plaintiffs respectfully pray that this Court:

(1) declare Commerce's actions as described in Counts I-VI, including its overall finding of circumvention, unsupported by substantial evidence and otherwise not in accordance with law;

(2) find Thang Long, Zhongjia and TL Trung are eligible to provide certifications showing their merchandise was not produced under one of the five circumventing scenarios;

(3) remand to Commerce with instructions to determine that the safe harbor merchandise is not covered by the Orders even when exported by companies on the so-called backlist;

(4) order Commerce to issue cash deposit instructions to CBP consistent with this Court's

decision; and

(5) provide such other relief as this honorable Court deems proper.

<div style="margin-left: 40%">

Respectfully submitted,

/s/ Jeffrey S. Grimson
Kristin H. Mowry
Jill A. Cramer
Bryan P. Cenko
Ronalda G. Smith
**Mowry & Grimson, PLLC**
*Counsel to Plaintiffs*

</div>

Date: September 13, 2023